IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN DAWSON, M53531, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 25-cv-859-DWD ) |
| JONATHAN WILSON, BEAU JONES, ILL. DEPT. OF CORR., | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Kevin Dawson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center (Pinckneyville). Specifically, Plaintiff alleges that Defendant Wilson used excessive force against him, and Jones either participated or failed to intervene. The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that on May 30, 2024, his cell was subject to a shakedown. (Doc. 1 at 7). During the shakedown he was placed in a shower for holding. He claims nothing was discovered in his cell, but upon return to his cell problems arose when he asked to see a lieutenant or sergeant concerning harassment. (Doc. 1 at 8). At this point, Defendant Wilson told him to cuff back up and threatened pepper spray if he did not comply. At that point, Wilson indicated he was going to be taken to segregation. Plaintiff gave one hand to Wilson to be cuffed, and Defendant Jones grabbed his other arm. He claims that at this point, Wilson and Jones started to handle him roughly, despite the fact that he was not resisting their directives. He is paralyzed and uses a wheelchair, so they handcuffed him in the front of his body and forced him into his wheelchair. (Doc. 1 at 8). As Wilson and Jones wheeled Plaintiff towards the healthcare unit, Plaintiff began to clear his throat. Wilson grabbed his head and neck and forced his head down. Wilson stated that if Plaintiff spit on him, he would strike him. (Doc. 1 at 9).

Once inside the healthcare unit, Wilson directed Plaintiff to take a seat on a metal stool, but Plaintiff indicated he could not do so because with his paralysis, he had no balance and would not be able to remain seated on the stool. (Doc. 1 at 9). Wilson and Jones then began to attempt to force him onto the stool. During this struggle, Plaintiff claims that Wilson grabbed his ponytail and began to rapidly punch his face with full force. Plaintiff claims his face began to bleed and he screamed out for the help of nurses

who were present. (Doc. 1 at 10). Wilson then tossed Plaintiff out of his wheelchair into a laying position on the ground. Plaintiff was on his stomach while Wilson put a knee on his back and Jones sat on his legs. (Doc. 1 at 10). Plaintiff claims that he struggled to breath and pled for assistance or relief. Eventually, Jones left the room for a brief period and returned. Wilson told Jones that Plaintiff had hit his face or nose on the wall or ground. (Doc. 1 at 11).

A nurse was summoned to address Plaintiff's bleeding face. She informed Wilson and Jones that there were no staff on duty capable of performing stitches, and that per the doctor, Plaintiff would have to be transported to the hospital. (Doc. 1 at 11). Plaintiff alleges that he needed six stitches, and also ultimately required surgery to place a metal plate in his face due to damage to his right eye socket or orbit. (Doc. 1 at 7). Plaintiff claims that when asked about the encounter, Wilson and Jones both indicated that he had not spit on them, though Wilson claimed Plaintiff struck him at some point during the incident. (Doc. 1 at 11-12).

Plaintiff alleges that Wilson and Jones violated his rights under the Eighth Amendment. (Doc. 1 at 12). He also seeks to hold the Illinois Department of Corrections liable on the premise that they are responsible for making policies, and they are responsible for inmate safety. (Doc. 1 at 13). Plaintiff seeks compensatory damages. In support of his complaint, he submitted grievance documents.

Based on the allegations in the Complaint the Court designates the following counts:

>    **Claim 1:**   Eighth Amendment excessive force claim against Defendant Wilson for his actions on May 30, 2024;
>
>    **Claim 2:**   Eighth Amendment excessive force or failure to protect claim against Defendant Jones for his actions on May 30, 2024.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.**  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSALS

Plaintiff named the Illinois Department of Corrections as a defendant. Constitutional claims can be brought against a "person" under 42 U.S.C. § 1983, but the IDOC is not a "person" under § 1983.  *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) *citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) ("a State is not a 'person' within the meaning of § 1983"). Therefore, Plaintiff may not proceed against the IDOC.

### DISCUSSION

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.'  *Wilkins v. Gaddy*, 559 U.S.

34, 37 (2010). Here, Plaintiff contends the Defendants used more force than was necessary and attacked him while he was essentially defenseless and was not posing a threat. Plaintiff's allegations are sufficient to proceed against Wilson and Jones. Plaintiff also poses that even if Jones did not directly apply physical force, he also did not intervene in the force applied. This alternative theory is also sufficient to proceed. Thus, Claims 1 and 2 survive initial review under § 1915A.

### MOTION FOR RECRUITMENT OF COUNSEL

There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Here, Plaintiff has provided proof that he attempted to directly contact and recruit multiple attorneys to help him with this case.

Because the Plaintiff has demonstrated efforts to recruit his own counsel, the Court turns to considering the complexity of the case and plaintiff's competence to represent himself. "Some of the circumstances that require judicial consideration are the phase of the litigation, if the prisoner has been transferred between facilities, if the claims involved

the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony." *Thomas*, 951 F.3d at 860; *see Eagan v. Dempsey*, 987 F.3d 667, 682–83 (7th Cir. 2021). As for competence, "A judge will normally consider 'the plaintiff's literacy, communication skills, educational level, and litigation experience' along with any evidence in the record 'bearing on the plaintiff's intellectual capacity and psychological history.' But these are merely factors that are ordinarily relevant. No one factor is 'necessary or conclusive.'" *Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024) (internal citations omitted).

Here, Plaintiff has not provided much information at all about his competence to represent himself or the complexity of the case. He explains he has just some high school education, speaks "broken" English, and is not familiar with the law. Despite these impediments, his complaint was clear and direct, and he attached relevant exhibits. The next phase of this case will involve service of process undertaken by the Court, the defendants will then have time to file answers, and once answers are filed the Court will review them to determine next steps. In many inmate-filed cases, the next step required of the parties concerns the inmate's use of the grievance process and his exhaustion of administrative remedies. This phase usually involves the Plaintiff's own knowledge, it is not particularly complex, and the inmate is guided by clear orders and notices from the Court about how to navigate this phase. If a case passes this phase and proceeds to merits discovery, the Court will then issue a second detailed scheduling order for the parties to follow. At this second phase, the cases tend to get more complex. For now, the case

remains simple, and the Court believes Plaintiff is competent to proceed on his own. His motion will be denied without prejudice. As the case proceeds to the more complex stages, Plaintiff may file a new motion for counsel. If he does so, he should clearly explain what aspects of the case have become difficult for him to manage on his own.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** survives against Defendant Jonathan Wilson and **Claim 2** survives against Defendant Beau Jones. By contrast, Plaintiff has failed to state a claim against the Illinois Department of Corrections, and the Clerk shall **TERMINATE** IDOC.

The Clerk of Court is **DIRECTED** to prepare for Defendants Jonathan Wilson and Beau Jones: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for

sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED: May 22, 2025**

<u>s/ David W. Dugan</u>
DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.